### UNITED STATES of America

v.

### John J. SHEA, a/k/a "Red," et al., Defendants.

### Crim. No. 90–10204–K.

United States District Court, D. Massachusetts.

Nov. 5, 1990.

Richard M. Egbert, Boston, Mass., John C. Doherty, Andover, Mass., R. Marc Kantrowitz, William Brown, Eileen M. Donoghue, Patrick J. Murphy, Joseph P. Murphy, Regina L. Quinlan, Quinlan & Smith, Michael J. Liston, Palmer & Dodge, Peter T. Elikann, Boston, Mass., Richard M. Welsh, N. Grafton, Mass., Henry F. Owens, III, Owens & Associates, Kevin O'Dea, James E. Carroll, Peabody & Arnold, James S. Dilday, Daniel D. Gallagher, Matthew H. Feinberg, Segal, Moran & Feinberg, Alfred E. Nugent, Nancy Merrick, Merrick & Louison, Richard Bachman, Hale, Sanderson, Byrnes & Morton, Mark H. Ruby, Charles R. Dougherty, Hill & Barlow, Edward J. Lee, Hale, Sanderson, Byrnes & Morton, Boston, Mass., for defendants.

## MEMORANDUM AND PROCEDURAL ORDER

KEETON, District Judge.

Given the number of defendants, the number of counts and estimates of probable length of trial, the court has an obligation to take steps early in the life of this case to ensure the goals enumerated in Rule Two of the Federal Rules of Criminal Procedure:

> These rules are intended to provide for the *just determination* of every criminal proceeding. They shall be construed to secure *simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.*

Fed.R.Crim.P. 2 (emphasis added). The need to eliminate unjustifiable delay is underscored here by the pre-trial detention of the lead defendant, Shea (*See* Memorandum and Order of October 10, 1990, Docket No. 328, 749 F.Supp. 1162).

This action commenced on August 9, 1990, when a federal grand jury returned this and three other indictments, charging a total of 51 individuals with cocaine trafficking and related charges. The indictment in this case charges 23 defendants in a total of 57 counts.

At a conference held October 23, 1990 in this and the largest of the related cases (CR No. 90–10203–Wd), involving 19 defendants, government counsel stated that they would be ready to commence trial of all charges against all 23 defendants in this case by January 16, 1991, the "TRIAL DATE" specified in a Procedural Order entered in these two cases on September 27, 1990 (Docket No. 206). (That Procedural Order also specified a BACKUP TRIAL DATE, and included other provisions regarding coordination of the two cases.) Government counsel further stated on October 23, 1990, that they would propose to try these two cases concurrently, starting the second a week after starting the first. Finally, the government estimated that its case-in-chief would require approximately six to eight weeks of court time, on a schedule of five four-hour sessions per week.

Several of defense counsel predicted that they could not be ready for trial and would expect to ask for a continuance. The court scheduled a further conference for November 13, 1990, before which time government counsel is expected to file a written submission designating which portions of taped conversations (of a total length in excess of 1500 hours) the government proposes to offer in evidence at trial.

On the basis of information now before me, I find the government's estimate of length of trial to be unrealistic. Experience with trials involving fewer than half the number of defendants in this case leads to the expectation that the trial of all 23 defendants on all 57 counts would extend from six months to a year or longer, even under judicial control as rigorous as can be maintained consistently with the rights of the parties to a fair trial.

■ Because of the large number of defendants and the extensive list of charges (57 counts, 99 overt acts), this case illustrates a problem, recurring with increasing frequency, regarding the obligation of courts to use wisely their limited resources for the administration of justice. Courts must weigh not only the interests of the parties to a case (here, the government and all defendants) but also the public and private party interests in "just, speedy, and inexpensive determination" (Fed.R.Civ.P. 1; cf. Fed.R.Crim.P. 2, *quoted supra*) of all other litigation, civil and criminal, pending in the court.

The issues presented by a criminal case of this nature are not simply issues regarding prosecutorial discretion in fashioning an indictment and the extent of judicial control over that discretion. Rather, a case such as this presents a potential clash among the interests of the government in the prosecution of the case, the interests (including procedural rights) of the defendants in the case, and the interests of all other litigants before the court, civil and criminal.

As this Memorandum and Procedural Order is being prepared, the court is advised that, through the routine random process, it has drawn another criminal case involving 15 defendants, 16 counts, and similar charges (CR No. 90–10241–K). In light of the growing docket of complex cases, trial of the instant case, if permitted to proceed untailored, will unreasonably impair the court's ability to provide prompt, fair and just disposition of this second complex case and of all other matters pending before the court now and throughout the duration of the instant proceedings.

■ The government, of course, has a legitimate interest in presenting its best case against every defendant. Judicially imposed orders of the kind considered in this Memorandum may impair this interest to some extent. The government's interest, however, is only one of many interests at stake. Prosecutorial discretion to choose among legitimate methods of serving the government's interest does not have automatic priority over all other interests that a court must take into account in docket and case management, both pretrial

and during trial, to serve the interests of justice.

■ A federal court of appeals has authority, by rules and orders, to direct the management of cases in trial courts of the circuit. *See United States v. Casamento*, 887 F.2d 1141 (2d Cir.1989) (offering directions to district judges in that circuit), *cert. denied*, —— U.S. ——, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990); *cert. denied*, —— U.S. ——, 110 S.Ct. 2564, 109 L.Ed.2d 746 (1990). To date, the First Circuit has not addressed the issue of docket and case management with regard to complex criminal trials. In the absence of direction from the court of appeals, each district court has authority and responsibility for managing both pretrial proceedings and trials before it so as to protect the interests of the parties and the public in just determination of a criminal proceeding with "simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." Fed.R.Crim.P. 2.

■ To serve these objectives, a court may tailor the size of a case and length of a trial by limiting the number of counts and the number of defendants. *Casamento*, 887 F.2d at 1151–52. A court may also find it necessary to limit the scope of the evidence in such a tailored trial, and as well to limit methods of proof and examination of witnesses that impair fairness or produce unjustifiable delay.

The Second Circuit has explicitly authorized and encouraged, if not directed, district courts of that circuit to manage potentially unwieldy criminal cases pursuant to stated "benchmarks" that guide the exercise of discretion. In *Casamento*, 887 F.2d at 1151–52, having listed some of the advantages and disadvantages of multi-defendant "mega-trials," the Second Circuit declared as one of the benchmarks:

> First, the district judge should elicit from the prosecutor a good-faith estimate of the time reasonably anticipated to present the government's case. Though the prosecutor's estimate should not become the subject of a contested hearing, the judge need not accept the estimate without question but should be free to

make an independent assessment based on various factors including the number of defendants, the time and territorial scope of the crimes charged, the number of witnesses likely to be called, and the number and size of exhibits likely to be introduced, including wiretaps.

*Casamento*, 887 F.2d at 1151–52.

The Second Circuit added that in cases where the judge determines that the time necessary for the government to present its case will exceed four months, the judge should require the prosecutor to "provide a reasoned basis" explaining why a joint trial of all the defendants "is more consistent with the fair administration of justice than some manageable division of the case into separate trials for groups of defendants." *Id.*, 887 F.2d at 1152. In evaluating the adequacy of the government's showing, the district court must weigh the interests of the prosecution, the defendants, the jurors, the court, and the public. *Id.*

Considering the advisability of separate shorter trials, the Second Circuit encouraged the district judge to explore whether justice will be served better by limiting the number of defendants and charges so that the trial can proceed expeditiously and, though in more limited form, nevertheless with exposure of defendants to adequate maximum penalties. The Court explained:

> It makes little sense to extend the time of a multi-month trial by including a peripheral defendant against whom a few days of evidence in a separate trial would be sufficient to obtain conviction on scaled down charges exposing him to approximately as much punishment as he would likely have received on the original charges.

*Casamento*, 887 F.2d at 1152. The Court further directed that, in assessing the appropriate number of defendants for a trial in which the prosecution's case is likely to exceed four months, the judge should require an "especially compelling justification for a joint trial of more than ten defendants." *Id.*

Summing up the advantages to be achieved from breaking apart a multi-de-

fendant case, even where the aggregate time for separate trials would not be less than the time for a joint trial of all defendants, the Second Circuit stated:

> The lives of each group of jurors would be imposed upon for a shorter time, there would be a smaller group of defense counsel in each trial with a consequent reduction in trial disputes, the trial judge would have a more manageable task, and the jurors' ability to focus on individual defendants would be enhanced.

*Id. See also United States v. Gallo*, 668 F.Supp. 736, 754–61 (E.D.N.Y.1987) (describing the "enormous burden on the courts, as well as on defendants, the defense bar, jurors, and even prosecutors" posed by complex, multi-defendant "monster" cases), *aff'd*, 863 F.2d 185 (2d Cir. 1988), *cert. denied*, 489 U.S. 1083, 109 S.Ct. 1539, 103 L.Ed.2d 843 (1989), *and cases cited therein.*

Finally, citing the example of one of the defendants in the original *Casamento* indictment, the Second Circuit noted the efficacy of severing a defendant against whom the government's evidence would require a comparatively short time to present; "the prosecution's estimate that separate trials will each require all of the evidence presented at a joint trial is often not borne out when severances occur." 887 F.2d at 1152.

The directions supplied by the Second Circuit in *Casamento*, though formally applicable only to the trial courts of that circuit, are helpful in framing the obligation of this district court as well. An added problem of concern regarding trials in this district is that courthouse facilities for accommodating multi-defendant criminal trials are extremely limited.

■ The authority and responsibility for ordering that overly complex and lengthy trials be tailored to more manageable scope is independent of and in addition to authority to grant motions for severance under Fed.R.Crim.P. 12(b)(5) and 14, and orders authorized under statutes and precedents concerning rights of the public and the parties to "speedy trial." Underlying all these sources of authority is a principle that aims for reasonable speed in litigation. The principle applies both in pretrial proceedings and during trial. It underscores the court's authority and responsibility for breaking apart an unduly complex and lengthy case.

## PROCEDURAL ORDER

■ For the foregoing reasons, it is ORDERED:

Unless, on or before December 1, 1990, the government or a defendant or group of defendants has filed a written submission proposing what the court determines to be a better alternative, the court expects to enter an order immediately after that date as follows:

(a) The charges against Defendants Shea, Mackie, Bagley and Cahill in counts one through eleven and the charges against defendants Shea and Cahill in count fifty are severed from all remaining charges under the indictment in this case, and will be tried first.

(b) The trial of the charges against these defendants in counts one through eleven and count fifty shall commence on the "TRIAL DATE" (see Procedural Order entered September 27, 1990, Docket No. 206).

(c) This is not a ruling on motions some defense counsel have stated they intend to file for changing the TRIAL DATE. Neither, however, does this Procedural Order suggest that such motions will be viewed favorably. The court is making no rulings and no suggestions one way or the other on contentions not yet before the court for ruling.

(d) Any defendant or group of defendants who would be ready for trial on some or all of the charges against that defendant or defendants at a date earlier than the "TRIAL DATE" may submit a motion requesting that a severed part of this case involving charges against them be tried ahead of the charges referred to in paragraph (a).

(e) The court concludes that it is appropriate to place upon the government, to the extent stated here, risks of harm incident to substantial underestimation of the

length of the government's case-in-chief. The order for trial will be fashioned before the trial commences and thus at a time when no one can be certain that the estimate of length of trial is reasonably accurate. If, as trial proceeds, it becomes apparent to the court that a trial of excessive length is likely, the court may, after hearing all parties, enter a further order reducing the number of defendants, the number of counts, or both. To avoid any impairments of the opportunity to prosecute all charges included in the indictment that might result from an order thus entered after jeopardy has attached, the government is directed to reexamine its position regarding estimated length of trial and submit an estimate based on identification of witnesses, expected length of testimony of each witness, and estimated length of time required for receiving and publishing to the jury all exhibits, including tape recordings, that the government intends to introduce at trial. One purpose of this Procedural Order is to provide the court with a basis for reassessing estimated length of trial as the trial proceeds. The government's submission shall be filed on or before December 1, 1990.